IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


MICHAEL D. WIGGINS,
       Petitioner,

vs.                                Case No.: 3:06cv489/LAC/EMT

JAMES R. McDONOUGH,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 18).  Petitioner filed a reply (Doc. 27).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

       The procedural background of this case is undisputed by the parties and established by the state court record.  Petitioner was charged by a second amended information with three counts of lewd and lascivious conduct with a person under twelve years of age (Doc. 18, Ex. A).  Petitioner entered into a plea agreement with the State whereby he agreed to plead nolo contendere to the charges in exchange for two ten-year concurrent sentences of incarceration on Counts 1 and 2 and a consecutive fifteen-year term of probation on Count 3 (Doc. 18, Ex. B).  The agreement further

provided that the State would not prosecute further illegal conduct "set forth in the F.S. 90.404 Notice (<u>Williams</u> Rule Notice), regarding the 2 witnesses named therein" (*id*.).  On January 2, 2004, Petitioner entered his plea in accordance with the agreement, and the court accepted the plea and sentenced Petitioner in accordance with the agreement (Doc. 18, Exs. C, D).  Petitioner did not directly appeal his conviction or sentence (Doc. 1 at 2).

On February 1, 2004, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 18, Ex. E).  The trial court summarily denied the motion on February 24, 2004; however, upon Petitioner's motion for rehearing, the court granted rehearing and construed the motion as a timely motion to withdraw plea filed pursuant to Rule 3.170(1) of the Florida Rules of Criminal Procedure (Doc. 18, Exs. G, H).  Following an evidentiary hearing, at which Petitioner was represented by counsel (Doc. 18, Ex. I), the trial court denied the motion to withdraw plea in an order rendered May 21, 2004 (Doc. 18, Ex. J).  Petitioner did not appeal the decision (*see* Doc. 1 at 3).

On July 22, 2004, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 18, Ex. K at 1–3).  The trial court summarily denied the motion on August 13, 2004 (*id*. at 4–28).  Petitioner appealed the decision to the Florida First District Court of Appeal (First DCA).  The appellate court affirmed the decision per curiam without written opinion on February 8, 2005, with the mandate issuing March 8, 2005 (Doc. 18, Exs. N, O).  <u>Wiggins v. State</u>, 894 So. 2d 251 (Fla. 1st DCA Feb. 8, 2005) (Table).

On September 19, 2005, Petitioner filed a Rule 3.850 motion, which he subsequently amended (Doc. 18, Ex. P at 1–50).  The trial court summarily denied the motion on November 8, 2005 (*id*. at 51–80).  Petitioner appealed the decision to the First DCA, but the appellate court affirmed the decision per curiam without written opinion on July 10, 2006, with the mandate issuing August 7, 2006 (Doc. 18, Exs. S, T).  <u>Wiggins v. State</u>, 934 So. 2d 454 (Fla. 1st DCA July 10, 2006) (Table).

Petitioner filed the instant habeas action on October 31, 2006 (Doc. 1 at 1).[1]  Respondent
concedes that the petition was timely filed (Doc. 18 at 4–5).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for
a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court"
upon a showing that his custody is in violation of the Constitution or laws of the United States.  As
the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for
habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and
Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.
In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as determined
>> by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State court
>> proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams
v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was
described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court
> to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[1]Petitioner did not file his petition through the institutional mail; rather, a third party outside the institution
mailed the petition for him (see envelope attached to Doc. 1).  Therefore, the "mailbox rule" does not apply, and the
petition is deemed filed when it was received by the clerk of court.

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the
Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529
U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas,
and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was
joined by Justices Souter, Ginsburg, and Breyer.

> claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may
> issue only if one of the following two conditions is satisfied—the state court
> adjudication resulted in a decision that (1) "was contrary to . . . clearly established
> Federal law, as determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of . . . clearly established Federal law, as
> determined by the Supreme Court of the United States."  Under the "contrary to"
> clause, a federal habeas court may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this court on a question of law or if the state
> court decides a case differently than this Court has on a set of materially
> indistinguishable facts.  Under the "unreasonable application" clause, a federal
> habeas court may grant the writ if the state court identifies the correct governing
> legal principle from this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, --- U.S. --- 127 S. Ct. 2842, 2858, --- L. Ed. 2d --- (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S.

---

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
           (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  Id. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order

to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.   Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). The Baldwin Court commented that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id.  With regard to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

---

[4]The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

[5]In  his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id.*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement

---

[6]The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

Ground one:  "Double Jeopardy."

(Doc. 1 at 4).  Petitioner states he was charged with and convicted of three identical counts of lewd and lascivious conduct, which have identical elements, in violation of the Double Jeopardy Clause (*id.*).  In further support of his double jeopardy argument, Petitioner states that the offense actually occurred on only one occasion, not multiple occasions (*see* Doc. 27 at 2, 5–6).  In Petitioner's reply brief, Petitioner raises an additional claim that the charging document was insufficient because it

failed to adequately notify him of the specific acts he was accused of committing (*see* Doc. 27 at 2–8).

Respondent concedes that Petitioner exhausted his double jeopardy claim by raising it in his Rule 3.800(a) motion (Doc. 18 at 7).  Respondent did not address Petitioner's challenge to the sufficiency of the charging document, as that claim was raised for the first time in Petitioner's reply brief.

1.      Clearly Established Supreme Court Law

The Double Jeopardy Clause protects a defendant from multiple punishments for the same offense.  Missouri v. Hunter, 459 U.S. 359, 365–66, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); North Carolina v. Pearce, 395 U.S. 711. 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989).  The Supreme Court's decision in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932) sets forth the proper analysis for multiple charges brought for closely related occurrences.  The inquiry involves an analysis of the statute which defines the offense to determine whether the offense is a continuous offense, having duration, or an offense consisting of an isolated act.  *Id.* at 302.  Thus, legislative intent determines in large part whether the state may seek separate punishments for violations of the same statute that occurred on different occasions.  Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes.  Hunter, 459 U.S. at 368.

2.      Federal Review of State Court Decision

Petitioner raised the double jeopardy claim as his sole ground for relief in his Rule 3.800(a) motion (Doc. 18, Ex. K at 1–2).  In the written opinion denying Petitioner's claim, the state court found the following facts:  (1) in the written plea agreement, Petitioner stipulated that the arrest report would serve as the factual basis for the plea (*id*. at 4, 14); (2) Petitioner also stipulated to the factual basis for the plea at the sentencing hearing (*id*. at 4, 18); (3) the arrest report showed that the alleged crimes occurred on four separate occasions between the fall of 2000 and September of 2001 (*id*. at 4, 21–22); and (4) the information charged Petitioner with three separate acts of lewd and lascivious conduct (*id*. at 4–5, 24).  Based upon these facts, the state court concluded that because

the acts charged in the information were distinct and separate acts, Petitioner's convictions on the three counts did not violate double jeopardy principles (*id*. at 5).

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence; therefore, those factual findings are presumed correct. Furthermore, upon review of the party's submissions and the state court record, the undersigned concludes that Petitioner has failed to demonstrate that the state court decision was contrary to or an unreasonable application of Supreme Court law.

The statute in effect at the time of Petitioner's offense conduct (September 2000 to September 2001) provides, in relevant part, as follows:

(6) Lewd or lascivious conduct.--

(a) A person who:

1. Intentionally touches a person under 16 years of age in a lewd or lascivious manner; or

2. Solicits a person under 16 years of age to commit a lewd or lascivious act

commits lewd or lascivious conduct.

Fla. Stat. § 800.04(6)(a) (effective Oct. 1, 1999 to present). The Florida statute plainly punishes any discrete act of touching in a lewd or lascivious manner rather than continuous conduct of doing so, and the Florida courts have interpreted the statute as doing so. *See* State v. Paul, 934 So. 2d 1167, 1173 (Fla. 2006) (holding that two criminal episodes of lewd and lascivious conduct occurred where defendant touched the victim's genital area or the clothing covering it and kissed the victim on the neck upon entering the living room, and then defendant invited the victim to a more private room and exposed his genitals and rubbed them on the victim's stomach).

In the instant case, the state court found as fact that the offenses for which Petitioner was charged occurred on four separate occasions between the fall of 2000 and September of 2001. Indeed, Petitioner agreed in the written plea agreement that the arrest report provided a factual basis for his plea, and the arrest report stated that Petitioner touched the child victim on her vaginal area on approximately four occasions between the fall of 2000 and September of 2001 while Petitioner was working as a home health nurse for the victim (Doc. 18, Ex. B at 4, Ex. K at 21). Although the

victim of each of the offenses was the same, and the offenses occurred in the same location (the victim's home), the fact that the offenses occurred on four separate occasions over a one-year period, and the Florida statute punishes each act of lewd and lascivious touching, defeats Petitioner's contention that the three charges constituted a single criminal episode. Petitioner failed to demonstrate that he received multiple punishments for the same offense; therefore, the state court decision denying his double jeopardy claim was not contrary to or an unreasonable application of Supreme Court law.

To the extent Petitioner attempts to challenge the sufficiency of the charging document on due process grounds, the claim is not properly before this court as Petitioner raised it for the first time in his reply brief. See Herring v. Sec'y Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) (arguments raised for the first time in a reply brief are not properly before a reviewing court) (citations omitted). Additionally, the claim is procedurally barred. Upon careful review of the state court record, the undersigned finds no evidence that Petitioner challenged the sufficiency of the information in any of his post-conviction applications, and he did not directly appeal his conviction; therefore, the claim was not exhausted in the state courts.[7] Furthermore, Petitioner is barred by state procedural rules from exhausting the substance of his claim because challenges to the sufficiency of the charging document are properly made on direct appeal of the conviction and must be preserved for appellate review by objecting to sufficiency of the information or moving to dismiss it in the trial court. See Pena v. State, 901 So. 2d 781, 785–86 (Fla. 2005) (defendant waived right to challenge any defects in indictment by failing to object to sufficiency of indictment or moving to dismiss it); Stanfill v. State, 384 So. 2d 141 (Fla. 1980) (reviewing challenge to indictment where defendant did not waive his right to challenge the indictment under Florida Rules of Criminal Procedure 3.140(o) and 3.190(b, c)); State v. Law, 400 So. 2d 1260, 1261 (Fla. 1st DCA 1981). In the instant case, Petitioner did not directly appeal his conviction, which was the appropriate channel for raising his claim, nor did he raise the claim in his motion to set aside his plea; therefore, the claim is procedurally barred from presentation to the state courts, and procedural default exists for

---

[7]Although Respondent expressly waived the exhaustion defense to Petitioner's double jeopardy claim in its answer to the habeas petition, this express waiver does not apply to Petitioner's challenge to the sufficiency of the charging document as that claim was raised for the first time in Petitioner's reply brief.

purposes of federal habeas review.  Coleman, 501 U.S. 722; Chambers, 150 F.3d at 1327 (if a petitioner failed to raise an issue in the state court and under state law would be procedurally barred from doing so, federal courts should apply the state procedural default law and hold the claim to be barred); Grubbs v. Singletary, 120 F.3d 1174, 1177–78 (11th Cir. 1997) (same); Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

Furthermore, Petitioner does not allege cause for failing to raise this claim in the state courts, nor has he made a colorable showing of actual innocence of the crimes for which he was convicted. Therefore, he is not entitled to federal review of his claim that he was deprived of due process because the charging document failed to allege sufficient facts to enable him to prepare a defense.

B.      Ground two:  "Due process violation due to State's loss of evidence."

(Doc. 1 at 4).  Petitioner states that the Florida child protective services agency conducted an interview with the victim and recorded the interview on videotape (id.).  Petitioner states that the prosecutor disclosed the existence of the videotape in its discovery disclosures, but when the defense requested a copy of the videotape, the prosecutor failed to provide it because it was misplaced, and the prosecutor failed to notify the trial court of its discovery violation (id.).  Additional factual allegations regarding this claim are found in Petitioner's Amended Rule 3.850 motion, the state post-conviction application in which Petitioner raised this claim.  In that motion, Petitioner alleged that the victim was interviewed by the Child Protection Team (CPT) in October of 2001 (Doc. 18, Ex. P at 31).  He alleged that the defense filed a request for discovery in April of 2003 and requested a copy of the CPT videotape on several occasions prior to January 2, 2004, the date he signed the plea agreement (id. at 31, 40).  Petitioner stated that the prosecutor responded that they "were looking for it [the videotape]" (id. at 31, 40–45).  Petitioner submitted a copy of a letter from the prosecutor to a detective with the Santa Rosa County Sheriff's Office, sent in August of 2003 and again in September of 2003, stating,

Please provide me with the following information as soon as possible, . . .

. . . .

      6.      We need at least one copy of the video tape of the CPT interview of the victim asap—the defense is getting upset with us that they have not received this yet.  CPT says the S/O [Sheriff's Office] has it.

      Thank you for your prompt assistance on the above.  We have not been able to get the above items as of this time.

(*see* Doc. 18, Ex. P at 49).  Petitioner stated that defense counsel was waiting until she received the videotape to schedule a deposition of the victim, but when she did not receive the video, she conducted the deposition anyway.  Petitioner admitted that the defense had a transcript of the videotaped interview (*id*. at 40); however, he asserted that the actual videotape was critical because during parts of the interview, the victim was asked to demonstrate certain things, and those demonstrations were not reflected in the transcript (*id*.).  Petitioner asserted that the videotape was material to the defense because it was necessary to show the victim's demeanor to the jury (*id*. at 41).  Additionally, the videotape proved that the victim was coerced during the interview; for example, there were five crayons on a table, and the victim was asked to place one inside the box, which left four in front of her; the victim was later asked how many times Petitioner touched her, and she stated "about four" (*id*.).  Petitioner also contended that the videotape was critical impeachment evidence because the victim stated during the CPT interview that there was penetration, but following her deposition, the prosecutor reduced the charges from sexual battery to lewd and lascivious molestation (*id*.).

      Respondent states that to the extent Petitioner is alleging a bad faith failure to preserve potentially useful evidence on the part of the prosecution, he exhausted his claim by presenting it in his amended Rule 3.850 motion (Doc. 18 at 11).  Respondent contends that Petitioner is not entitled to relief because his guilty plea waived his claim that the State's failure to provide the videotape violated due process (*id*. at 11–13).  Furthermore, even if Petitioner's plea did not constitute a waiver of this claim, Petitioner failed to show that the prosecution withheld the videotape or that there was any official misconduct associated with the loss of the videotape (*id*. at 14).

      Review of the state court decision through the deferential lens of § 2254 would render analysis of this issue more complex than reviewing Petitioner's claim de novo; therefore, in the

interest of providing a simple and concise analysis of Petitioner's claim, the undersigned will review the claim independent of the state court's analysis.

Initially, it is well settled that a voluntary and intelligent guilty plea generally forecloses federal collateral review of allegations of antecedent constitutional deprivations.  Tollett v. Henderson, 411 U.S. 258, 266–67, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (holding that state prisoner's guilty plea foreclosed challenge to racial discrimination in grand jury selection).  The United States Supreme Court explained the rationale underlying this rule in Menna v. New York, 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975), reasoning that a voluntary and intelligent guilty plea, by establishing a reliable admission of factual guilt, "removes the issue of factual guilt from the case" and, therefore, "renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction."  423 U.S. at 63 n.2.  Accordingly, once judgment on a plea is final, collateral inquiry for constitutional claims that occurred prior to the entry of the guilty plea is generally limited to whether the plea itself was knowing and voluntary.  *See* United States v. Kaiser, 893 F.2d 1300 (11th Cir. 1990) (challenges to convictions upon guilty pleas are limited to whether the underlying plea was counseled and voluntary); United States v. Wright, 43 F.3d 491 (10th Cir. 1994) (plea of guilty does not prevent defendant from arguing that his claim was improperly induced); Acha v. United States, 910 F.2d 28 (1st Cir. 1990) (guilty plea does not prevent defendant from raising claim for ineffective assistance of counsel in the process by which the plea was accepted).

Yet, this rule barring collateral attack on guilty pleas is not absolute.  For example, the principal exception to this rule, established in Blackledge v. Perry, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974) and reaffirmed in Menna v. New York, *supra*, is that a guilty plea does not bar a constitutional claim that "goes to the very power of the State to bring the defendant into court to answer the charge brought against him."  Blackledge, 417 U.S. at 29 (holding prosecutorial vindictiveness claim not barred by guilty plea).  Put differently, a guilty plea does not foreclose from federal collateral review those constitutional claims that involve the "right not to be haled into court at all."  *Id.*; Menna, 423 U.S. at 62–63 (holding double jeopardy claim not barred by guilty plea). Consistent with this rationale, the Blackledge/Menna exception applies only to constitutional claims that are clear on the face of the indictment and the existing record.  *See* United States v. Broce, 488

U.S. 563, 576, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (rejecting double jeopardy claim that required proof of additional factual evidence beyond face of indictment).  Thus, even claims that go to the power of the government to hale the defendant into court, if they require proof of additional factual evidence, may not be raised on federal habeas because they have been "foreclosed by the admissions inherent in [a petitioner's guilty plea[ ]."  *See* Broce, 488 U.S. at 576.

There is no Supreme Court law that clearly establishes whether a guilty plea waives a defendant's claim under Brady, and the Eleventh Circuit has not decided the issue, *see* United States v. Matthews, 168 F.3d 1234, 1242 (11th Cir. 1999).[8]  However, applying the existing precedent to the instant case, the state court record establishes that Petitioner's guilty plea waived his claim that the State's failure to actually produce the videotape violated due process.[9]  Initially, Petitioner's Brady claim does not implicate the legitimacy ab initio of the charging information or otherwise relate to the power of the State to bring him into court to answer the charges against him.  Additionally, even if Petitioner's claim was based upon the power of the government to hale him into court, his claim is foreclosed by the admissions inherent in his guilty plea.  In the plea agreement, Petitioner certified that he understood that he was giving up several rights, including the right to compel or make any witnesses come to trial, the right to cross-examine witnesses, the right to present any and all defenses he may have, the right to a trial of any kind, and the right to appeal the issue of guilt or innocence (*see* Doc. 18, Ex. B).  Furthermore, Petitioner agreed that the facts set forth in the arrest report provided the factual basis for his plea, and he certified that he reviewed

---

[8]Other circuits are divided on this issue.  *Compare* Matthew v. Johnson, 201 F.3d 353 (5th Cir. 2000) (absent a claim that a prosecutor's failure to disclose exculpatory information rendered a habeas petitioner's plea unknowing or involuntary, Supreme Court precedent does not provide that a prosecutor's non-disclosure prior to entry of a guilty or nolo contendere plea is a Brady violation or otherwise a violation of the Due Process Clause) *with* Tate v. Wood, 963 F.2d 20 (2d Cir. 1992) (guilty plea may be collaterally attacked on grounds that the State failed to disclose material exculpatory information); White v. United States, 858 F.2d 416 (8th Cir. 1988) (same); Miller v. Angliker, 848 F.2d 1312 (2d Cir. 1988) (same); Campbell v. Marshall, 769 F.2d 314 (6th Cir. 1985) (same).

[9]Petitioner does not present his claim as a challenge to his plea on the ground that it was involuntary or unknowing; rather, he presents purely a Brady claim that the State disclosed the existence of a videotape to the defense but failed to actually produce it and failed to notify the court of this alleged discovery violation (*see* Doc. 1 at 4; Doc. 27 at 8–9).  Although Petitioner states in his reply brief that he "had no choice but to enter into a plea bargain," and "[i]t [the plea agreement] was by no means voluntary," this unverified allegation raised for the first time in his reply brief is insufficient to properly present a constitutional challenge to his guilty plea to this court.  *See* Herring, 397 F.3d at 1342.

the facts of his case with his counsel and agreed that there were sufficient facts available to the State to justify his plea (*id*.). The arrest report included the factual assertion by the child victim that Petitioner touched her vaginal area on approximately four occasions between the fall of 2000 and September of 2001 while Petitioner was working as a home health nurse for the victim (Doc. 18, Ex. K at 21). Thus, by entering the plea agreement, Petitioner intentionally relinquished or abandoned his known right to compel the State to produce evidence against him and to confront this evidence against him, including the videotape of the victim's interview with the CPT. Moreover, Petitioner's plea colloquy with the sentencing judge rendered irrelevant his claim that the State failed to preserve and produce the videotape, because he told the judge under oath that he agreed there was a factual basis for the plea (*see* Doc. 18, Ex. D at 4). It is well settled that "representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge, 431 U.S. at 73–74. Therefore, the undersigned concludes that Petitioner's claim is not in the category of claims excepted from the rule barring collateral attacks on guilty pleas set forth in Blackledge and Menna.

Even if Petitioner's Brady claim was not waived by entry of his guilty plea, Petitioner has failed to establish that a constitutional violation occurred. In Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Three elements establish a Brady violation: (1) the evidence must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice. Banks v. Dretke, 540 U.S. 668, 691, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004). Evidence "favorable to an accused" includes both impeachment evidence and exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985). In Bagley, the Court emphasized that only the suppression of material evidence justifies a new trial or resentencing under Brady, with materiality being defined as evidence creating "a reasonable probability that, had the evidence been disclosed to the defense, the result of the

proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682 (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Thus, in <u>Bagley</u>, the Supreme Court adopted the <u>Strickland</u> definition of prejudice as the standard for determining whether non-disclosed evidence was material for purposes of establishing a <u>Brady</u> violation. *See id.*, 473 U.S. at 682; *accord* <u>Brown v. Head</u>, 272 F.3d 1308, 1316 (11th Cir. 2001) ("The prejudice component of an ineffective assistance claim and the materiality component of a Brady claim both require the same thing . . . a reasonable probability of a different result in the proceeding."); <u>Jennings v. McDonough</u>, No. 5:02cv174/RH (N.D. Fla. Sept. 29, 2005), *affirmed* 490 F.3d 1230 (11th Cir. 2007). The <u>Strickland</u> definition of prejudice that is applied to guilty pleas is whether there is a reasonable probability that, but for defense counsel's errors, a petitioner would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Applying this definition to the <u>Brady</u> context, the materiality element is satisfied if Petitioner establishes a reasonable probability that, but for the State's non-disclosure, he would not have pled guilty and would have insisted on going to trial.

Upon review of Petitioner's submissions and the state court record, the undersigned concludes that Petitioner failed to demonstrate that the videotape of the CPT interview was suppressed for purposes of the <u>Brady</u> analysis. Initially, even if the prosecutor violated state discovery rules by failing to produce the lost videotape and failing to advise the trial court that the videotape was lost, a violation of discovery rules does not ipso facto amount to suppression that can support a <u>Brady</u> claim for a new trial or resentencing. *See* <u>Jennings v. McDonough</u>, 490 F.3d 1230, 1238 (11th Cir. 2007). Additionally, Petitioner admitted under oath at the evidentiary hearing on his motion to withdraw his plea that he was aware at the time of his plea that the videotape existed and that the State had been attempting to locate it for eight or nine months (Doc. 18, Ex. I at 44–45). Petitioner also admitted that he was aware of the existence of the audiotape of the interview (*id.* at 49), and he conceded in his subsequent Rule 3.850 motion that the defense had a transcript of the videotaped interview (Doc. 18, Ex. P at 40). At the same evidentiary hearing, Petitioner's trial counsel testified that prior to Petitioner's entering the plea agreement, she explained to him that the videotape of the CPT interview had been misplaced or lost, but that she had an audiotape of the

interview  (Doc. 18, Ex. I at 77–78).  She also testified that prior to entering the plea agreement, she deposed the child victim, and Petitioner viewed a videotape of the deposition (*id*. at 62, 84–85). Petitioner does not dispute that he viewed the videotape of the deposition prior to entering his plea. Based upon these undisputed facts, the undersigned finds that Petitioner knew of the subject matter of the victim's knowledge about the case and her statement to the CPT, and Petitioner was aware of the import and tenor of the CPT videotape from other sources, namely the audiotape and transcript of the interview.  Furthermore, Petitioner does not allege that the prosecutor had access to the videotape; indeed, Petitioner's submission to the state court, namely, the letter from the prosecutor to the Sheriff's Office, indicate that the neither the prosecutor nor the defense had access to it.  Thus, there was no suppression of the videotape under Brady.[10]  *See* Jennings, 490 F.3d at 1238–39 (no suppression for Brady purposes where, although State failed to disclose taped statement from witness, defendant had knowledge not only of witness's name but also the subject matter of her knowledge about the case) (citing United States v. Griggs, 713 F.2d 672, 674 (11th Cir. 1983) (per curiam) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged Brady material, there is no suppression by the government.")).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

C.    Ground three:  "Prosecutorial misconduct during defense's deposition of victim."

(Doc. 1 at 5).  Petitioner states that during the videotaped deposition of the child victim, the victim was asked how many times she was touched by Petitioner, and she replied one; the prosecutor then coached the witness by asking her the same question while holding up a certain number of his fingers (*id*.).

Respondent contends that although Petitioner presented a claim of prosecutorial misconduct to the state courts in his Rule 3.850 motion, he failed to alert the state court to the federal nature of the claim; therefore, the claim was not exhausted (*see* Doc. 18 at 15–16).  Additionally, Respondent

---

[10]There is no allegation in this case that the prosecution actively misled the defense about the existence or whereabouts of the videotape; thus, this case is distinguishable from Banks v. Dretke, where the Supreme Court warned that a rule "declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process" in response to the State's contention that the "prosecution can lie and conceal and the prisoner still has the burden to . . . discover the evidence."  *Id.*, 540 U.S. at 696.

argues that Petitioner's guilty plea waived any claim that the prosecutor coached the victim during her deposition (*id.* at 16).

Regardless of whether Petitioner fairly presented his federal prosecutorial misconduct claim in the state courts, the claim is without merit.[11]  As with Petitioner's <u>Brady</u> claim, the undersigned concludes that Petitioner waived his claim that the prosecutor violated due process by allegedly coercing the victim during her deposition.  Initially, Petitioner has failed to show that his claim of prosecutorial misconduct implicates the legitimacy ab initio of the charging information or otherwise relates to the power of the State to bring him into court to answer the charges against him.  Although the prosecutor amended the charging document after the child victim's deposition, Petitioner does not allege that the amendment increased the number of charges based upon the prosecutor's allegedly coercing the victim to state that Petitioner touched her four times instead of one.  Petitioner admits, and the state court record shows, that the amendment to the information after the deposition reduced the nature of the charges from four counts of capital sexual battery to four counts of lewd and lascivious molestation, based upon the lack of evidence of penetration, and the information was amended again, pursuant to the plea agreement, to reduce the charges to three counts of lewd and lascivious conduct (*see* Doc. 18, Ex. P at 40, 41, 47, 57; Ex. F at 1, and attached Exs. A, B; *see also* Ex. P, Docket Sheet entries dated 05/01/2003 (indicating State's filing of four counts), 12/30/2003 (indicating State's filing of amended information changing counts 1–4), 01/02/2004 (indicating no action by the prosecutor as to count 4, and State's filing of amended information charging three counts)).

Additionally, even if this court liberally construed Petitioner's claim as a contention that the amended information was based upon testimony that was coerced by the prosecutor, his claim is foreclosed by the admissions inherent in his guilty plea.  In Petitioner's Rule 3.850 motion, Petitioner admitted that he met with his counsel on December 11, 2003, to discuss his case (*see* Doc. 18, Ex. I at 26, 28), and he does not dispute that on that date he viewed the videotape of the deposition during which the alleged coercion occurred; indeed, in Petitioner's Rule 3.850 motion he is able to describe the prosecutor's questioning of the victim in detail (*see* Doc. 18, Ex. I at 62,

---

[11]Pursuant to 28 U.S.C. § 2254(b)(2), a claim may be denied on the merits notwithstanding the failure of the petitioner to exhaust state court remedies.

84–85; Ex. P at 38–39).  As discussed *supra*, Petitioner certified in the plea agreement that he understood he was giving up several rights, including the right to compel or make any witnesses come to trial, the right to cross-examine witnesses, the right to present any and all defenses he may have, the right to a trial of any kind, and the right to appeal the issue of guilt or innocence (*see* Doc. 18, Ex. B).  Additionally, Petitioner agreed in the plea agreement that the factual basis for his plea was set forth in the arrest report, and the arrest report stated that on October 19, 2001 (nearly twenty-two months prior to the deposition), the child victim stated that Petitioner touched her on her vaginal area on approximately four occasions between the fall of 2000 and September of 2001 (Doc. 18, Ex. B at 4, Ex. K at 21).  Thus, by entering the plea agreement, Petitioner intentionally relinquished or abandoned his known right to confront the State's evidence against him, including the victim's statements during her deposition.  Furthermore, Petitioner's plea colloquy with the sentencing judge rendered irrelevant his claim that the State coerced the victim to state that Petitioner touched her four times, because during his plea colloquy he told the judge under oath that he agreed there was a factual basis for his plea to three counts of lewd and lascivious conduct; that he read, understood, and agreed to the terms of the plea agreement; that he was entering his plea freely and voluntarily; and that no one forced or coerced him to enter the plea (*see* Doc. 18, Ex. D).  As discussed *supra*, these declarations in open court carry a strong presumption of verity.  Therefore, the undersigned concludes that Petitioner's claim of prosecutorial misconduct is barred by his guilty plea.[12]  *See* Broce, 488 U.S. at 576 (if Petitioner's claims require proof of additional factual evidence outside the face of the indictment and the existing record, they may not be raised on federal habeas because they have been "foreclosed by the admissions inherent in [a petitioner's guilty plea[ ].").

      For the aforementioned reasons, it is respectfully **RECOMMENDED**:

      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

---

[12]Petitioner does not present his claim as a challenge to his plea on the ground that it was involuntary or unknowing; rather, he presents purely a due process claim that the prosecutor engaged in misconduct during the deposition (*see* Doc. 1 at 5; Doc. 27 at 9–12).  Although Petitioner states in his reply brief that his plea was "f[a]r from voluntary," this unverified allegation raised for the first time in his reply brief is insufficient to properly present a constitutional challenge to his guilty plea to this court.  *See* Herring, 397 F.3d at 1342.

At Pensacola, Florida, this  20th  day of November 2007.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).